UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

SMITH WHOLESALE CO., INC., et al. )
)
v. ) NO. 2:03-CV-221
)
PHILIP MORRIS USA INC. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Philip Morris USA, Inc. (PM) for reconsideration of this Court's May 24, 2005, order imposing sanctions on PM for failing to engage in good faith mediation in this case. Both parties have now filed briefs and affidavits in support of their respective positions. Before addressing the merits of PM's motion, however, the Court will initially address an issue raised by the filings which indicates to the Court that the parties and their counsel have some fundamental misunderstandings of the Court's prior orders, not only for the purpose of giving guidance to counsel in this case but to provide guidance to other counsel who represent civil litigants in this Court.

The parties seem to have chosen to ignore that it was their own failure to abide by the Court's clear directive in the scheduling order filed November 24, 2003, that has precipitated the present litigation with respect to sanctions. The

scheduling order filed in this case on November 24, 2003 [Doc. 102], provided as follows:

> The parties have been advised of the availability of the Federal Court Mediation Program and the parties have agreed to consider utilization of the program. On or before November 15, 2004, the parties <u>shall</u> jointly notify the Court, in a pleading to be filed in the same manner as all other pleadings, as to whether or not an agreement has been reached by the parties to utilize mediation. If no agreement to utilize mediation has been reached by the parties, the pleading <u>must</u> contain a statement that the matter is not suitable for mediation and the reasons therefore. Unless the matter is shown not to be suitable for mediation, the Court may, with or without the agreement of the parties, and except for those cases exempted pursuant to Local Rule 16.3, refer all or part of the underlying dispute to mediation.
> (Emphasis added)

PM's counsel states that the only "question" she understood to be raised by that order was whether the parties believed the matter to be "suitable for mediation" and that she interpreted the term "suitable for mediation" to mean "whether the parties were willing to attend and actively participate in mediation regardless of the perceived likelihood of success." To be frank, if that is all that the Court meant by its order, the Court was perfectly capable of using plain English to say so. Giving the language of the order its plain and ordinary meaning, the parties were required to notify the Court, in a joint pleading filed not later than November 15, 2004, whether they had agreed to utilize mediation. If no agreement had been reached, the pleading "<u>must</u>" contain a statement that the matter is not suitable (meaning appropriate for) mediation <u>and the</u>

2

<u>reasons therefore.</u>  Based upon the reasons given, the Court may then, <u>with or without the agreement of the parties,</u> refer <u>all or part </u>of the case to mediation.

In this case, both plaintiffs and defendant simply ignored the Court's order and no pleading of any kind was filed by the November 15, 2004, deadline set by this Court, thus depriving this Court of any input from the parties as to whether the subject matter or procedural posture of the case, in whole or in part, made it an appropriate one for mediation.  This Court had no indication from the parties that less than a full range of the underlying issues should be referred to mediation or that the Court should consider relaxing the Local Rules requiring physical attendance of all parties or their representatives to minimize expenses or that the Court should consider mediation for some purpose other than possible settlement, such as a narrowing or clarifying of the issues.  This Court expects literal and complete compliance with the directives of its orders and the failure of the parties to do so undermines their assertions of careful adherence to the Local Rules and the Court's orders throughout this case.

This Court, and the litigants who appear before it, has made increasing use of mediation both as a way to promote a relatively inexpensive method of dispute resolution and to manage this Court's heavy civil docket.  As acknowledged by these parties, mediation is often successful in resolving disputes, even where the parties to those disputes are unwilling to voluntarily submit their disputes to mediation or where the litigants are convinced that their dispute cannot be settled.  Even if the parties'

3

dispute is not settled during the mediation process, mediation often forces the parties to reevaluate their claims and positions and serves to narrow and clarify issues. Mediation can and often does, result in settlement of a case where the litigants themselves have believed that the case could not be settled.  This Court considers mediation and other forms of alternative dispute resolution to be an indispensable part of this Court's ability to manage its docket and to effectuate timely and inexpensive resolution of parties' disputes.  This Court, therefore, takes the mediation process seriously and also takes the parties' obligation to attend and participate in mediation very seriously, whether the mediation is voluntarily agreed to or court ordered, as it was in this case.  When parties ignore this Court's directives to provide information necessary for this Court to make informed and realistic assessments of the potential value and necessity of mediation, and where, as here, the parties simply refuse to provide the court with the requested input, the court cannot make informed decisions about the need for mediation, the scope of the mediation, that is, whether all or part of the underlying dispute is referred to a mediator, the timing and location of the mediation, whether or not to require the attendance of all parties at the mediation or other modifications that might lessen the expense of the mediation or increase the probability of its success.  The parties' actions in this case deprived this Court of the opportunity to make an informed evaluation on any of these issues.

This Court's order of May 24, 2005 relied heavily upon the fact that PM attended the mediation session in this case despite the obvious high unlikelihood of a settlement and failed to notify the Court of the same prior to the mediation being held. While PM claims to have attended the mediation session "with an open mind" as to all issues, the record clearly establishes that any significant changes to the PM Wholesale Leaders (WL) Program were "off the table" as far as PM was concerned. PM argues that their position with respect to changes in the WL program was communicated to plaintiffs' attorneys prior to the scheduled mediation, resulting in a belief by them that substantive changes to the WL program would not be discussed at the mediation. Although this argument was raised by PM at the oral argument on the original motion for sanctions held in this case on May 9, 2005, neither of the affidavits submitted by Mr. Keegan or Mr. Kiesel address that assertion. Mr. Keegan did, however, address the assertion at the oral argument on plaintiffs' original motion for sanctions. Mr. Keegan agreed that Mr. Brille had advised him prior to the mediation that "it would be very difficult to have Philip Morris agree to changes to the program" and that he (Keegan) indicated it might be better if they talked about monetary payment as a complete settlement and not changes to the program. Needless to say, Mr. Keegan does not agree with PM's assertion that he indicated before the mediation that the structure of PM's program would not be an issue in the mediation. The differing views of the content and meaning of the pre-mediation conversations between Mr. Brille and

5

Mr. Keegan cannot be reconciled by this Court. It is possible that one or the other is being less than fully frank with this Court and his client(s) but it is equally as possible that there was simply a misunderstanding between the two. Either way, the resolution of that disagreement would require this Court to make findings about the subjective intent and belief of these attorneys, something it cannot do, and upon which the Court cannot justify an award of sanctions.

This Court regrets the contention between these parties over this issue and very much regrets the time and expense committed by these parties to the failed mediation attempt. After careful consideration, however, this Court has come to the conclusion that both parties bear some fault for the sequence of events which occurred. The parties are clearly equally at fault in their failure to carefully comply with this Court's scheduling order in the first instance. And, while this Court still finds that PM could and should have notified the Court of its "off the table" attitude with respect to issues involving its WL program, the plaintiffs had an equal opportunity to suggest to this Court that the Court set parameters for the mediation or refer less than the full range of issues to the mediator. As PM points out, the plaintiffs could also have sought relief from the Local Rule requiring the attendance in Atlanta of all parties or their representatives. Succinctly, neither plaintiffs nor defendant have acted in complete good faith with respect to the Court ordered mediation; yet, this Court cannot find that either party has acted in bad faith. For this reason, the defendant's motion for

6

reconsideration will be **GRANTED** and it is **ORDERED** that the Court's order of May 24, 2005 be, and is hereby, **VACATED** and plaintiffs' motion for sanctions [Doc. 216] is **DENIED**.

It is further **ORDERED** that the affidavits of Michael Brille, Melinda Meader, Kyle M. Keegan and Chris D. Kiesel be maintained by the Clerk UNDER SEAL, pending further order of this court or the Sixth Circuit Court of Appeals.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE